# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| PAUL BUMPAS<br>individually and on behalf of<br>all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>AMERICANS FOR PROSPERITY,<br><u>Serve at Registered Agent:</u><br>    CSC-Lawyers Incorporating Service<br>    Company<br>    221 Bolivar Street<br>    Jefferson City, MO 65101<br><br>*Defendants*. | Case No.: 4:19-CV-122<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Paul Bumpas brings this putative class action against Americans for Prosperity ("AFP") for text messages sent in violation of the Telephone Consumer Protection Act ("TCPA").

### PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Plaintiff Bumpas has been an individual over the age of 21 and a resident of Jackson County, Missouri.

2. Defendant AFP is a foreign nonprofit corporation with a principal place of business at 1310 N. Courthouse Rd., Suite 700, Arlington, VA 22201. AFP can be served through its Missouri registered agent CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

3. This Court has subject matter jurisdiction over this TCPA action pursuant to 28 U.S.C. § 1331 in that this case involves a question of Federal law.

4. The Court has personal jurisdiction over Defendant and venue is appropriate in this

district pursuant to 28 U.S.C. § 1391(b)(2). Defendant sent unlawful text messages to residents of this district and a substantial portion of the material events and omissions occurred here. Defendant directs telephone calls and text messages to phone numbers with area codes specific to this district. Moreover, on information and belief, Plaintiff Bumpas received unlawful text messages from Defendant while he was physically present within this district.

## NATURE OF THE ACTION

5. Per its website, Defendant AFP is a nonprofit corporation that "recruit[s] and unite[s] concerned citizens in 35 states to advance policies that will help people improve their lives."

6. Within the last four years, to further its purpose, increase its membership and donors, and spread its political ideology, Defendant AFP developed, acquired, licensed, and/or used custom, high-powered text-messaging equipment ("autodialer") that can generate and/or select random, sequential, and/or stored phone numbers, dial such numbers, and send automated text messages to such numbers.

7. As a result, within the last four years, Defendant AFP intended to cause and did cause many autodialed political text messages to be sent to cell phone numbers of Plaintiff and the putative class members in violation of the TCPA.

8. By sending the text messages at issue, Defendant has caused Plaintiff and the putative class members (as defined herein) actual harm.

9. Defendant sent such text messages even though Plaintiff and the putative class members never provided prior express consent in a signed writing, or otherwise, for Defendant to use an autodialer (as defined by law) to send text messages to specific cell phone numbers.

10. Plaintiff, on his own behalf and on behalf of all others similarly situated, brings this lawsuit seeking an injunction requiring Defendant to cease all unsolicited text messaging and for

an award of statutory damages under the TCPA to Plaintiff and members of the putative class.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**
**47 U.S.C. § 227,** *et seq*

11. The TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service.

12. A text message to a cellular telephone qualifies as a "call" under the TCPA.

13. An "automatic telephone dialing system"[1] means any equipment that has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

14. The statutory definition of ATDS includes a device that stores telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

15. If an ATDS is used to make a call that constitutes advertising[2] or telemarketing,[3] the caller must obtain prior express written consent before it may make such call.

16. When prior express *written* consent is required, it must be expressly stated in a writing signed by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

17. If an ATDS is used to make a call that does not constitute advertising or

---

[1] Also referred to as "ATDS" or "autodialer".

[2] Advertising means any material advertising the commercial availability or quality of any property, goods, or services.

[3] Telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

telemarketing, the caller must obtain prior express consent before it may make such call.

18. Prior express consent must be expressly stated by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

19. The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where a defendant's conduct was done willfully or knowingly.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

20. Between February 18, 2015 and February 18, 2019, Defendant and/or its agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiff and the putative class members.

21. Specifically, the hardware and software used by Defendant and/or their agents not only has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, it also has the capacity to sequentially or randomly access stored telephone numbers and automatically send text messages to those numbers *en masse*.

22. Plaintiff and the putative class members never provided express consent, in a signed writing or otherwise, for Defendant to send autodialed text messages to their cellular phone numbers.

23. Defendant was aware that the above-described text messages were being sent to cell phone users without their prior express consent, but Defendant chose to send them anyway.

24. Due to Defendant's unsolicited text messages, Plaintiff's and the putative class members' privacy was invaded, their solitude was disturbed, their phones were interfered with and lifespans depleted, including phone batteries, LCD screens, speakers, vibration motors, and other components.

## Factual Allegations Specific to Plaintiff Bumpas

25. At all relevant times, Plaintiff Bumpas has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, which has a "816" area code specific to Western Missouri.

26. On multiple occasions within the last four years, Defendant and/or its agents used an autodialer to send text messages to Plaintiff's cell phone.

27. Plaintiff Bumpas was physically present in this district when Defendant and/or its agents used an autodialer to send automated political text messages to Plaintiff's cell phone.

28. Defendant's text messages were not sent for any emergency purpose; rather, they were sent for political purposes.

29. For example, one text message Defendant sent to Plaintiff stated:

> Senator Claire McCaskill voted 100% for President Obama's judicial picks, but opposed this President's first nominee, Justice Gorsuch. Is she playing politics?

30. Until receiving Defendant's text messages, Plaintiff had never heard of Defendant's nonprofit.

31. Plaintiff never provided his cell phone number to Defendant.

32. Plaintiff never provided prior express consent, in a signed writing or otherwise, for Defendant to send autodialed text messages to his cell phone number.

## Class Action Allegations

33. Plaintiff restates and incorporates by reference all paragraphs of this Complaint.

34. For Count I (the "Autodial Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom Defendant

5

(or a third party on Defendant's behalf) sent a political text message to their cellular or wireless telephone between February 18, 2015 and February 18, 2019.

35. Excluded from the above-defined classes are Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, and employees, Defendant's counsel, any persons or entities who have previously filed a TCPA lawsuit against Defendant (either individually or on behalf of a putative class), any persons or entities who have previously settled a TCPA claim with Defendant, the Court and Court personnel, and Plaintiff's counsel.

36. **Numerosity – Fed. R. Civ. P. 23(a)(1).** Plaintiff does not know how many members are in the putative class but believes them to be several thousand, if not more. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their phone numbers can be ascertained from information and records in the possession and control of Defendant or third parties acting on Defendant's behalf.

37. **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions include the following:

    (a)    Whether Defendant and/or its agents used an automatic telephone dialing system to send text messages;

    (b)    Whether Defendant's text messages were sent for an emergency purpose;

    (c)    Whether Defendant's text messages were sent willfully or knowingly; and/or

    (d)    Whether, and to what extent, putative class members are entitled to equitable relief, including declaratory relief, a preliminary injunction,

and/or permanent injunction.

38. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the putative classes he seeks to represent. The factual and legal basis of Defendant's liability to Plaintiff is the same for all putative class members: Defendant violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express consent in a signed writing or otherwise.

39. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

40. **Superiority – Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for putative class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if putative class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I - "AUTODIAL CLASS"
## VIOLATIONS OF THE TCPA, 47 U.S.C. § 227

41. Plaintiff restates and incorporates by reference all paragraphs of this Complaint.

42. The TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service.

43. A text message to a cellular telephone qualifies as a "call" under the TCPA.

44. An "automatic telephone dialing system" means any equipment that has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

45. The statutory definition of ATDS includes a device that stores telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

46. If an ATDS is used to make a call that constitutes advertising or telemarketing, the caller must obtain prior express written consent before it may make such call.

47. When prior express *written* consent is required, it must be expressly stated in a writing signed by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

48. If an ATDS is used to make a call that does not constitute advertising or telemarketing, the caller must obtain prior express consent before it may make such call—*i.e.*, the signed writing requirement is not applicable.

49. Prior express consent must be expressly stated by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

50. Within the last four years, Defendant and/or its agents employed an ATDS to send non-emergency text messages to the cellular or wireless telephones of Plaintiff and the members of the Autodial Class.

51. The equipment employed has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

52. The equipment employed has the capacity to store telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

53. Defendant's text messages were not sent for emergency purposes; rather, they were sent for political purposes.

54. Plaintiff and the Autodial Class members never provided express consent, in a signed writing or otherwise, for Defendant to send autodialed text messages to their cellular phone numbers.

55. As a result of Defendant's conduct, Plaintiff and the Autodial Class members were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

56. Plaintiff and the Autodial Class members are also entitled to an injunction against future calls.

57. Defendant's text messages were willful and knowing, in that Defendant knew it was generating, obtaining, and/or storing cellular phone numbers and employing equipment that would send autodialed text messages to such numbers; Defendant intended that such equipment would in fact send automated text messages to such numbers; and Defendant knew it had not obtained prior express consent in writing, or otherwise, from Plaintiff or the Autodial Class members to send such text messages.

58. The Court should treble the amount of statutory damages available to Plaintiff and

the Autodial Class members and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the Autodial Class, seeks $1,500 per violation of the TCPA; a declaration that Defendant's telemarketing methods, acts and practices herein violate the TCPA; and an injunction prohibiting Defendant from continuing to engage in such unlawful methods, acts, and practices.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: February 19, 2019

Respectfully submitted,

WOOD LAW FIRM, LLC

By  /s/   Ari Rodopoulos
Noah K. Wood, MO #51249
noah@woodlaw.com
Ari N. Rodopoulos, MO #58777
ari@woodlaw.com
1100 Main Street, Suite 1800
Kansas City, MO 64105
T: 816-256-3582
F: 816-337-4243
*Attorneys for Plaintiff*